Thank you and in case you submit it, when you're ready you can call the next case. I'd like to reserve four minutes for rebuttal please. Good morning. My name is Dennis Thompson. I represent the appellant in this case, Anthony Rorrer, who is with us today with his fiancée, observing this oral argument. This is the case of the monocular firefighter. He was a firefighter of 18 years when he suffered a catastrophic injury rendering him blind in one eye. It was a non-work related injury, but it was still an injury that rendered him with monocular vision. Mr. Rorrer is still a firefighter to this day serving as a firefighter in the City of Talmadge doing all the duties of a firefighter save one, and the accommodation they have made for him is that he can not drive an apparatus, lights and sirens. And that accommodation has been made easily by the City of Talmadge. This is a direct evidence case, which means the Monette paradigm applies. And there are several undisputed facts in this case. The first is that Anthony Rorrer is disabled. The second is that Anthony Rorrer requested reasonable accommodation. Specifically two, one that he be allowed to serve as a firefighter doing all duties except driving lights and sirens and apparatus. The second was that he be transferred to the Fire Prevention Bureau. The third undisputed fact is that the City refused to engage in the interactive process. Does it have to be a reasonable request for the City to engage in the interactive process? No. It has to be a request for accommodation. Reasonableness is determined as it goes through the interactive process. It can be an unreasonable request ultimately, but it didn't exist. It could be, but that's not pertinent to this case here because the request was reasonable. Let's assume it wasn't. They would still have to engage in the interactive process, and in fact Judge Clay was on a case where they talked about that, and that was the Jakabowski case, 2010, and also recently the Cardenas case, Cardenas-Mead, which was decided just in 2013, where he described in Jakabowski the decision was, and it wasn't authored by Judge Clay, but he was on that panel, was that the employee has to request accommodation. At that point, we sit down with the employer, and the employer has to then determine whether there's undue hardship, has to determine whether it's an essential function, has to do that. That's where that is it reasonable or not reasonable comes out. There is no requirement that the employer, under Jakabowski, there is no requirement that the employer counter-proposal of an accommodation. However, that goes to good faith. And then you get into the case of Nance v. Goodyear where they talk about good faith. Certainly, it goes a long way to good faith if the employer comes back and says, you know, here's some other accommodations we can do for you. It shows that they're clearly engaging in the interactive process in good faith. That's not an issue here. Stowe never sat down with Tony Rohrer. Never tried to work out with him was there a reasonable accommodation. They just said, oh, monocular vision, can't do nothing for you, you're gone. The key to the fact that Tony Rohrer requested a reasonable accommodation and the fact that the city of Stowe did not engage in the interactive process, that's liability, and that's the Cardenas-Maid case. Again, Judge Clay, you would know that. And reduced to a formula, it's reasonable accommodation plus failure to engage equals liability. And that's, in essence, what that held. It's significant to note that every physician that actually examined Anthony Rohrer either clearly returned to work without restriction or indicated that he might be impaired driving lights and sirens. Dr. Singh was his ophthalmological surgeon. Released him to go back to work without restriction. Dr. Henderson, the first city doctor who actually did examine Anthony Rohrer, also returned to work without restriction. Let me ask you this, Counsel, to make certain this is correct. From the record, it appears that I think Dr. Moten was the one that said that your client could not return to work or could not perform the physician any longer. And he, as best I can tell you, he never examined your client. Is that right? That is absolutely correct. And that was in the EEOC v. Burlington, the case that you wrote. So the only doctor who said that he couldn't perform the physician was the one who did not examine him. And the ones who did examine him said he could have performed the physician. Is all that correct? That is correct. And that takes us right into the case that Judge Mays authored in 2007, the EEOC v. Burlington Santa Fe Railroad Company, where you made a lengthy discussion about the employer was relying on opinions of doctors who had never examined him. And really the point you made was how could you rely on this? What credibility did they have? It was a treating physician versus physicians who never examined him. The response, I think, as I understood it, was that in this case, almost on a per se basis, if you lost the sight of an eye, that would not comply with the regulations that were supposedly in effect in Stowe as to its fire department. That may be the response, but that's just incorrect. It's not correct at all. All right. The fact that he's just not able to perform. In fact, if you take a look at, first off, the ADAA, they have to engage the interactive process, and it's a very individualized assessment. Because really what they're saying is he's a direct threat. He can't perform. And again, EEOC v. Burlington Railroad, you talked about direct threat. And you said very much it's a very much individualized assessment. It has to be done. And it can't be done on subjective belief. Just because the employer subjectively believes that he can't perform, even if they in good faith think that, without the individualized assessment, it doesn't matter. They're still liable. And there was no such individualized assessment done here. Not even an attempt. I thought your response to Judge Mays was going to be quite a bit different. I thought you were going to say that it's a material dispute of fact as to whether the regulations were applicable or whether they were adopted or enforced by the city. And if that's a material dispute of fact, that might be an additional reason that summary judgment might have been inappropriate here. While it's true it is a material dispute of fact, the NFPA guidelines that we're referring to, the National Fire Prevention Association guidelines, while we're talking about the NFPA guidelines, and there is a genuine material dispute of fact as to whether they adopted them, there's a ton of evidence in the record that they didn't, the fact is whether the city of Stowe adopted them or didn't adopt them, again using your term in the last argument, it's a red herring. Because whether they adopted them or didn't adopt them, those roads lead to the same place, the ADAA. They get you back to the ADAA. Because the guidelines themselves say, you know, these aren't mandatory, and by the way, federal laws supersede these. And Counselor, I think that's probably kind of a long way of adopting Judge Clay's statement, but I wanted to ask you, what activity, what ADAA-protected activity did your client engage in that forms the basis of this ADAA retaliation claim? I'm shifting you to the next part of this. From the very time that he tried to come back to work, he requested the accommodation, was asking for the accommodation, that was the protected activity. I am now seeking accommodation under the ADAA. The city of Stowe, instead of doing anything under the ADAA, continued to have him stay off work, consuming his sick time. So in essence, it was like a suspension. It worked just like it. It wasn't that they put him on paid administrative leave. He was having to use all of his sick time. And when he ran out of sick time, he was terminated. So in essence, that is the protected activity for the retaliation. He starts asking for accommodation, and they start just going through what I just call really a dog and pony show, a kabuki theater, really, of how they can't do anything with him. And I remember sitting at one of those hearings with him, because I was retained relatively early in this, and we asked him point blank, what essential functions are you saying that Mr. Rohrer can't perform? And there was no answer. They all just sat there. Tell us, please. What is the protected activity you're claiming for purposes of the retaliation claim? Because it appeared in your briefing that you were talking about  And seemingly the problem with that would be that that would not be protected activity. It would be in the context of that protected worker, because it was a fitness for duty. And they were claiming that that protected worker was not fit for duty. But that doesn't afford your client any protection under the ADA. His protected activity would be connected to his own claim for disability, not that he testified in an arbitration proceeding for some other employee. I recognize that when I read it, that we didn't make that very clear. We probably could have clarified that. Certainly his seeking the ADA accommodation would be the protected activity, and that would certainly qualify as that, and his termination was after that. Isn't that circular, though? He seeks the accommodation, and he doesn't get it. So the retaliation is the accommodation. It's all part of a series of events, isn't it? These are not discrete activities that would justify a retaliation claim. That's, again, a question. It is a question, and I understand what you're asking. When we pleaded this, we pleaded with the facts we had at the time, and we weren't sure how it was going to shake out. But the retaliation claim to us was seeking the accommodation, where they went through this whole charade of not really doing anything, creating evidence, not going through the examination. There was a lot of stuff that went with that that we thought constituted retaliation for seeking the accommodation. If you argue it that way, it sounds like you're saying that the ADA violation claim and the retaliation claim are basically one and the same because you really haven't articulated any facts for one that you haven't also articulated for the other. I will concede that. Okay. I will concede that. This could very well, in fact, when you look at it in its rawest form, it is a failure to accommodate claim that results in a termination. I realize I'm out of time on this, and I don't want to be eating in, but just shortly on the 1983 claim, because there are two claims. The theory that the city of Stowe and the court grabbed was that an arbitration was not a tribunal. That was the basis that it said the case was dismissed. I submit that any arbitration relating to a public employee's termination of employment is certainly a tribunal for purposes of 1983 because it actually stands in loco of a court proceeding. This is an employee who has a property right in their employment. Therefore, whether there's a collective bargaining agreement or not, he still has that same protected property interest in his employment. If there was no collective bargaining agreement, he could have proceeded strictly under due process or some other constitutional violation. He has that property right. There are several reasons why the arbitration is considered a tribunal. All the witnesses are sworn in. Tony Rohrer was sworn in. They have subpoena power. In fact, we filed yesterday a supplement to the record where the arbitration decision that just came out, 12-31-2013, Mr. Yoder has now been put back to work by the arbitrator again because they arbitrated again after it was reversed. I've got the decision here. I brought 14 copies. I'd be happy to hand it to the clerks if you want me to do that. But in that opinion, the arbitrator makes special note that the city of Stowe failed to provide any kind of due process because Chief Colwell had these collateral issues relating to Yoder that were totally fabricated. If you want to continue, you may want to take some time away from your rebuttal. Okay. I just wanted to make sure we started talking a little bit. Can I just ask one quick question? Yes, ma'am. I want to get an answer. Are you saying here that it is the forum, the tribunal, that is significant rather than the public versus private entity for purposes of 1983? That's a really good question. Content, form, context. Gasper instructs us that content of speech is defined by the context. The context in this case is a tribunal. We're under oath, and we have all of these indicia of we want to preserve the integrity of the process and all that. All that goes. So it doesn't really matter what specifically Anthony Rohr said. It's that he was testifying on behalf of I think your answer to me is yes. Yes. Thank you. Good morning. Good morning. May it please the Court. My name is Frank Scaldon, and I represent the city of Stowe. I'll be taking eight minutes of the time and sharing the remainder with counsel for the Chief. Despite the plaintiff's arguments, the district court reached the correct result in granting summary judgment here. And this case is somewhat unique in the sense that the plaintiff here is not saying that he can do an essential function, that is drive an emergency vehicle with lights and sirens. The question is, is it an essential function? Correct. I think that that's really what he wants to do here is eliminate an essential function. Well, you know, your position is not as strong as it might be if you had a written policy saying what constitutes the ability to perform the job description or what way a person would be disabled from doing that. It would appear to me you really didn't have any criteria like that. And so you wind up trying to rely on these NFPA regulations. Then there's a dispute as to whether the city has adopted those or not, and the whole thing gets a little muddled, doesn't it? I don't believe so, because I believe that the NFPA guidelines do apply under the record. But even if they don't, I think it doesn't. But there's a factual dispute as to whether the city has adopted those or enforced them. I mean, maybe they are being utilized, but it certainly is a material, factual dispute in the case. Well, I disagree with that in the overall point, but I guess something that may un-muddle the record a bit is the job description. I mean, there couldn't be a more unequivocal determination that operating an emergency vehicle with lights and sirens is an essential function. Job description dispositive. In this case, I believe that it is. And it's unequivocal. It falls under essential functions. Isn't what an essential function is a question of fact to the trier of fact? Generally, this Court has held that it is. For example, Keith against City of Oakland decided last year. Isn't that so? In the Keith case, isn't that the holding of the Keith case? I think it's generally. I don't think the Keith case says that, in all circumstances, that it's a genuine issue of material fact. It clearly is not. I mean, just like there may not be an issue, but whether it's so is an issue of fact. It may be there isn't a dispute about it or the fact is not material. But if there's a dispute about it and it's material, it's not appropriate for summary judgment. That's true. And under the circumstances of this case, I believe as a matter of law operating an emergency vehicle with lights and sirens is an essential function. Well, everybody's going to agree about that. I mean, one of the doctors said that he could drive the vehicle. He may need to move his head more or something like that. But all that's even disputed as to whether he can operate the vehicle safely or not. I find very little here that's not disputed in the entire case. I think with regard to the experts, the only person that, Dr. Moten is the one who clears the firefighter for duty and knows the, is applying the NFA standards as well as the, as well as the. But wait a minute now, he didn't even examine the man. In fact, and his opinion wasn't so being contrary to the doctors who did examine him. I mean, this whole process seems rather mysterious. Let me see if I can untangle it a little bit. I mean, one. And his partner did examine him and reached a different conclusion. His partner examined him but relied on the, did not know the standards, and he does not have the authority to clear Mr. Rohr for duty. First, he relied on the. Did Dr. Moten know the standards? Yes. Applying, did he know the standards to apply? What did he apply? It would seem that the record is ambiguous. The records actually suggest that he gave various answers under oath about what he was considering when he reached his conclusion. My reading of the record is that he determined that under the NFPA, which designates driving an emergency vehicle as an essential function, which is absolutely in line with the history of the city, with the job description that's placed here, that it was his failure to be able to operate an emergency vehicle with lights and sirens. Go ahead. It was the position of the city that the NFPA was in effect in the city at the time. Is that the position? That is the position of the city, but, again, untangling it, even if you were to find that there's a question about its applicability, the history of the city in applying whether that's an essential function, the job requirements, the fact that every firefighter every year had to be trained and recertified in driving emergency vehicles. I mean, I think that under these circumstances, it's unequivocal that this is an essential function, and this is an essential function in this circumstance that is granted deference by the Sixth Circuit for the city's determination. Even if we can feel that we find that it is an essential function. At the summary judgment stage, the court's job is not to weigh the evidence, but simply to determine, in light of all this, whether a genuine issue of fact exists as to some material issue. And the emphasis ought to be drawn in favor of the plaintiff, the non-moving party. In this record, is there anything that would show, first of all, that the court did not engage in some weighing and is there anything to show where the court considered the direct evidence produced by the plaintiff and drew inferences favorable to the plaintiff? I think the factors that demonstrate that as a matter of law, where there's no requirement for weighing evidence, that as a matter of law, this is an essential function, is basically on the designation by the city and its job description expressly that this is an essential function, that not performing this act would be something that is very outside of – I mean, getting to the scene quickly is essential to what firefighters do. Time is of the essence with these types of cases, and the fact that the city has to have driver training and recertification every year, every firefighter, that that demonstrates also that it is an essential function. So under the totality of the circumstances, it's going through that as a matter of law, that this court should find that this is an essential function and affirm the lower court's decision. I see that I'm out of time. Thank you very much for your time. Thank you. Good morning. If it pleases the court, my name is Scott Harvey, and I represent the co-defendant to the city of Stowe, William Calba, who is the city of Stowe's fire chief. I am going to address the only claim that exists against Chief Calba, and that is the 42 U.S.C. 1983 claim alleging First Amendment retaliation, alleging that Chief Calba retaliated against Mr. Rohr in violation of his First Amendment rights. The first thing I'm going to do is address briefly something that I raised in the court below and that we raised in the briefing, and that is Chief Calba's qualified immunity to this claim. I do not believe that Mr. Rohr addressed this either in the briefs or in the oral argument for Mr. Thompson, so I don't want to spend a whole lot of time on it, but I just would like to reiterate that even if the court does find that there was protected speech at issue here, Chief Calba is still entitled to qualified immunity because the complaint does not allege the violation of a clearly established right of which a reasonable person in Chief Calba's position would have known, which is the standard for qualified immunity. And I will cite the court to the Gaspers case, which is a Southern District of Ohio court decision. The facts are nearly identical, and the court there granted qualified immunity to the individual defendant, as I said, under nearly identical facts, and that decision was issued just a few months before Mr. Rohr's termination. And in light of that, the law obviously was not clearly established for purposes of the qualified immunity analysis here. As I indicated previously, however, the court is inclined to address the merits of the First Amendment claim in terms of whether Mr. Rohr's speech was protected activity. I'll do that briefly as well. There's three. The state of prima facie claim for First Amendment retaliation, the plaintiff has to state three elements. One is, did the speech relate to a matter of public concern? Two, was there an adverse employment action? Three, was there retaliatory animus? And the second and third are not at issue here. They were not addressed below. The court did not rule on those. The court granted Chief Caldwell's motion to dismiss on the First Element only. As Mr. Thompson indicated, the critical components of the public concern free speech analysis are threefold. We have to look at the content of the speech, we have to look at its form, and we have to look at its context. In Mr. Rohr's reply brief, he criticizes Chief Caldwell for relying on, for analyzing and relying on the content element. I believe what he's arguing there is that content is really irrelevant here and what's dispositive are the other factors. And I will submit that that's not the case, at least not in the Sixth Circuit. The Sixth Circuit has held that content is the most important factor of the three, and that's from the Desrochers' opinion, 572, Fed Third, 703. When we look at the content of the speech here, and I quoted it at length in our brief, I quoted the entirety of the alleged speech, and it's from the arbitration, the labor arbitration hearing that Mr. Thompson also referred to. And what Mr. Rohr is testifying to there is his version of what he witnessed with regard to two workers in a shoving match. And we will submit that just looking at the content of the speech, that is not protected speech, because all he's doing is testifying about an internal employment dispute involving two coworkers. Mr. Thompson seems to also indicate that context is dispositive, and by context now I'm referring to the fact that it was sworn testimony in an arbitration tribunal. The argument there, I believe, from Mr. Rohr is that whenever somebody gives sworn testimony in any type of tribunal, whether it's in a court or in a labor arbitration proceeding, it's per se protected speech, and you don't have to look at content, and you don't have to look at form. All you have to do is see that it's sworn testimony in a tribunal. I could not find a single U.S. Supreme Court or Circuit Court of Appeals case, or a district court case, that holds that testimony given by an employee in a private labor arbitration is per se protected speech irrespective of its content and its form. I don't believe that law exists, and I don't believe the appellant has cited any case law to that authority. And again, going back to the Sixth Circuit standard, the Sixth Circuit has always clearly looked at all three prongs, content, form, and context. And as I mentioned earlier, content is the most important of those three. I believe that's all I wanted to address. If the Court has any questions, I believe I'm finished. All right. Thank you very much. We have a rebuttal. Several points, starting with the ADA issues first. Henschel was just decided last month, and Henschel talks about job descriptions. And Henschel says, it's a factor one of seven, and it identifies several others. It is not dispositive. It is a fact. It is not the fact. You have to look at a whole bunch of other stuff. And one of the most important things is, how is the practice actually done in the City of Snow? And the reality is, in the City of Snow Fire Department, you don't have to drive. Because who drives the apparatus is determined by the crew at the beginning of the shift. And there were several affidavits, most of which were disregarded by the trial court, and that's really why we ask that this Court reverses, that this case be reassigned, because we do not think we can get a fair hearing from this judge. And we say that because of him telling this Court that even if it reverses and finds that there's a genuine issue, he's going to strike all those anyway, because we apparently, in his view, did not comply with his order that we identify the five witnesses most likely to testify at trial three months before the close of discovery. Well, did the judge say anything to assert that he was not going to follow the orders of the Court of Appeals? No. What he said was, if this Court reverses, I'm going to strike these anyway. Strike what? Those affidavits. That's what he says. So we obviously have a concern, obviously. But the affidavits would be less controlling if the matter went to trial and the authors of the affidavits were available for cross-testimony and cross-examination. Our fear is he won't let them testify, because in his order, what he said was, absent extraordinary circumstances, nobody else is going to be allowed to testify except these five witnesses that you identify. And two of the witnesses that we identify, we objected to his order, first off. Two of the witnesses we identified were monocular vision firefighters who were working for other jurisdictions, and he struck those. Wait a minute now. Are you saying that the judge has said that he's not going to let your witnesses testify? Absent extraordinary circumstances. That's what his order says. That's what you're talking about, isn't it? It's a simple evidentiary ruling by a court in the course of a proceeding where he says the testimony of those other witnesses wouldn't be relevant. Isn't that his decision? He gave his reasons. I don't think it's relevant. I think it has to do with he's doing it as a sanction. That's what he's doing. His order came down on January 4th. In other words, he had a preliminary discovery cutoff where we were required to identify our witnesses. We were the only ones that did. We put together, because we didn't know how the story was going to shake out, so we identified people we thought were going to list from whom we were going to have to testify at trial. The city of Stowe didn't do that. Neither did Chief Caldwell. We're the only ones that produced the witness list. But you're talking about two other people who are firefighters who have, what do you call it, monocular vision? Yes, sir. And the court, as I understood the record, he entered an order, and he said their testimony is simply the benefit of it is outweighed by the burden of it, which is a routine decision. That's what he said. But then he comes back and says that they didn't have to engage in the interactive process. The reason he said that was, gosh, we'd have to get into their medical records. Why did they get monocular vision? We have to get all the facts and circumstances, blah, blah, blah, a lot of things getting into that. It would just expand discovery. Then he turns around and says, well, they don't have to engage in the interactive process because he's got monocular vision. No examination is necessary. Those are discrete issues, are they not? No, they're not. Because if it's if, I mean, they're discrete, but they're related. I guess that's the best way to say it. Well, he misstated the law because the law requires the parties to be able to engage in the interactive process, so the judge is not entitled to make that determination. That's what he did, though. That's separate from what you're talking about. A judge saying it's excessive to have these fighters, these other people come in because, as he said, all monocular vision impairments are not identical, in essence. And so this is a rabbit trail. Well, that's what he said at the time. But then he turned around and said, because Mr. Rohrer has monocular vision, that's all the part of it you have to look at. It doesn't matter what his circumstances are. So it may be a rabbit hole, but it's a rabbit hole that he created. Let's go back to where I think we started. You were suggesting that this panel ought to disqualify this judge from further hearing this case. And one of the reasons you're giving is he prevented you from seeking discovery from other people who have monocular vision and are currently serving as firefighters. Now, under those circumstances, I'm not going to pronounce on it, but it would be hard to see that that's not a routine decision by a trial judge examining whether a discovery might be excessive in the case. That's not the only reason, sir. I understand what you're saying. If that were the only reason, I would have the same trepidation you would. The reason is, is that we were required to identify five witnesses most likely to be used at trial in absent extraordinary circumstances. We're not going to get any others. Now, what was the basis for coming up with this arbitrary figure of five? I don't know. I don't know. I don't know. Didn't explain it. I don't know. I can't. I can't tell you. I mean, we were as dumbfounded as anyone else was when it came down. How can I identify five witnesses and only five witnesses three months before the close of discovery? How can we do this? Especially when two of those witnesses are people that were excluded, that left us with three. There was no way we'd be able to do that. We could just envision ourselves having a real fight trying to get other witnesses in. And by the affidavits, we had several firefighters at Stowe that said accommodating Tony Roar is very easy. We would never dispatch anybody with less than three. You could stick him over at one's house, and we're always going to dispatch with four. Counsel, I'll tell you what. You may want to wind up here because your red light is on. Yeah, okay. Regarding the 1983 action, and I guess content is defined by context. Don't start a new argument. If you have one or two sentences to wind up, you can do that. Okay. The context was Yoder's fit for duty, and that was the context of which the content was in. That makes it a great public concern. That's the context. All right. I would go back and say thank you very much for your time. I appreciate the questions, and thank you very much. Thank you. And the case is submitted. I'll give it to the clerk and we'll decide if we want to see it.